## COMMONWEALTH *vs.* MARGARET STEBBINS.

Upon the trial of an indictment for larceny, the defendant's taking of the property was proved; and the jury were instructed that he was not guilty if they were satisfied that he took the property under an honest belief that he had a legal right to take it in the way and under the circumstances that he did take it, although in fact he might have had no such legal right. *Held,* that this gave him no ground of exception.

The testimony of a single witness, that he received certain bank bills in a neighboring state, and that they were bills of banks there, is sufficient evidence to be submitted to a jury of those bills being of value and current in this commonwealth.

A defendant may be convicted, under Rev. Sts. *c.* 126, § 17, of stealing bank bills, without proof of their form or tenor.

Taking money with intent to appropriate it to the payment of a debt due to the taker from the party from whom it is taken is sufficient evidence of a conversion to the taker's own use, to constitute larceny.

Evidence that one charged with larceny was reputed at the time to be a person of property is inadmissible in his defence.

Upon an indictment for stealing bank bills and a gold coin, the jury returned this verdict: "Guilty, but not of taking the gold piece." *Held,* that the court might, against the objection of the defendant, record this verdict as a verdict of not guilty as to so much of the indictment as related to the stealing of the gold coin, and guilty as to the residue; although the jury, pursuant to agreement of the parties, had separated after finding their verdict.

An indictment for stealing bank bills, which states the amount and value of the whole, need not describe their number or denomination.

INDICTMENT on Rev. Sts. *c.* 126, § 17, for the larceny of " sundry bank bills current within said commonwealth, amounting to the sum of two hundred and ten dollars, and of the value of two hundred and ten dollars, and one gold coin current within said commonwealth, of the denomination of two dollars and fifty cents, and of the value of two dollars and fifty cents, of the goods and chattels and money of one Patrick Dorsay," at Springfield, on the 18th of January 1853. Trial in the court of common pleas in Hampden, at December term 1856, before *Morris,* J., who signed a bill of exceptions, the material parts of which were as follows :

The following facts appeared in evidence: In 1849 the defendant lent $200 in cash to Michael Dorsay, in the presence of his son Patrick, and took his note therefor, payable on demand, with interest. The money thus lent was used in keeping a shop in Holyoke by Patrick, in the name of Michael, who

soon after died, leaving no will, and no heirs but Patrick. No letters of administration were taken out upon his estate; but Patrick took all his property and appropriated it to his own use, and went to Middletown in Connecticut to reside. On the 18th of January 1853 Patrick came from Middletown and passed the night in Springfield at the house of Jerry Whalen, where the defendant also then was. When Dorsay went to bed, he placed under his pillow his pocket book, containing the bills and gold coin mentioned in the indictment. But one Dee, who was to sleep with Dorsay, insisting on having the money counted, Whalen took the pocket book from under the pillow, and, in the presence of Dee, of Dorsay and the defendant, counted the money upon a table near the bed. Immediately after it was counted the defendant took the bank bills, and re-fused to give them up, saying " that she had a right to it; that she had been looking for it a long time, and now she had got it; that the old man owed her, and now it was time for her to get her own." When she took the bills, no part of Michael Dorsay's note, which she held, had been paid.

" The court instructed the jury that Michael Dorsay's property descended to Patrick, subject to the payment of debts; that Patrick was an executor in his own wrong, and as such was liable on the claim held by the defendant against Michael Dor-say, to the extent of his intermeddling with his father's estate; and that the defendant would not be guilty of larceny, if the jury were satisfied that she took this money under an honest belief that she had a legal right to take this specific money in the way and under the circumstances that she did take it, although in fact she may have had no such legal right.

" The defendant contended that the only evidence that the bank bills taken by the defendant were of any value, or that they were current within this commonwealth, was the testi-mony of Patrick Dorsay, who stated that he received said bills in the State of Connecticut, and that they were bills of Con-necticut banks, most of them being bills of the Middletown banks, and there being three banks in Middletown. The de-fendant asked the court to instruct the jury that the defendant

could not be legally convicted, because there was no evidence that she took the gold coin, and because there was no evidence that the bank bills were current within this commonwealth or were of any value. It was admitted that there was no evidence that she took the gold coin. But the court declined to instruct the jury as requested; but did instruct them that they must be satisfied that said bills were of value, and were current in this commonwealth.

" The defendant also asked the court to instruct the jury that the defendant could not be convicted of stealing 'bank bills,' that being no offence in this commonwealth, and there being no evidence that said bills were in the form of 'bank notes' or 'promissory notes,' or what the form or tenor of said bills was. But the court refused so to instruct the jury, and did instruct them that the defendant might be convicted of stealing 'bank bills,' if they were satisfied that she took them with a felonious intent.

" The defendant further asked the court to instruct the jury that, to constitute larceny, the defendant must have converted or intended to convert the money to her own use; and if she appropriated or intended to appropriate it to the payment of a note which, or any part of which, Patrick Dorsay was legally liable to pay, it would not be such a conversion to her use as would be necessary to constitute larceny. But the court declined so to instruct the jury, except that the defendant must have converted or intended to convert the money to her own use.

" The defendant offered to prove by several witnesses that she was generally reputed, in January 1853, to be a woman of property. But the court rejected the evidence, and ruled that the only evidence which was admissible on this point was evidence of her having specific visible property which was liable to attachment.

" The jury retired to their room in this case shortly before the hour of adjournment of the court at night, and it was agreed by the defendant that if the jury should not agree before the court adjourned, they might seal up their verdict and separate. The jury did not agree till after the adjournment of the court,

and the next morning they returned this sealed verdict, which was written on a bit of paper, and the only words or marks on the paper were ' Guilty — but not of taking the gold piece.' The defendant objected to this verdict being received or recorded. Thereupon the presiding judge directed the clerk to affirm the verdict in this form, ' Guilty, except as to so much of the indictment as relates to one gold coin ; and not guilty as to so much thereof as relates to said gold coin.' The clerk then read to the jury the verdict as thus written. Whereupon the defendant objected that the jury having separated since they had agreed on their verdict, the form of the verdict could not be afterwards changed without the defendant's consent. But the court overruled the objection, and allowed the verdict to be affirmed in this form. The defendant objected to this verdict being received or recorded ; but the court overruled the objection.

" The defendant excepts to the foregoing rulings and instructions ; " and also moved in arrest of judgment, because the bank bills were not sufficiently described in the indictment, and excepted to the overruling of this motion.

*E. W. Bond,* for the defendant.

*D. W. Alvord,* for the Commonwealth.

METCALF, J. 1. The instruction to the jury, that the defendant was not guilty of larceny, if she took the money under an honest belief that she had a legal right to take it, was clearly unexceptionable.

2. It was not for the court, but for the jury, to decide whether the testimony of Dorsay was sufficient to satisfy them that the bank bills, which the defendant took, were current in this commonwealth, and were of value, as alleged in the indictment. The court therefore rightly declined to give the instruction which was requested on this point.

3. The instruction, that the defendant might be convicted of stealing bank bills, if she took them with a felonious intent, was correct ; as has been heretofore decided. Bank bills are " bank notes," within the meaning of the Rev. Sts. *c.* 126, § 17, on which this indictment is framed. *Eastman* v. *Commonwealth,* 4 Gray, 416.

4. There can be no doubt, that though the defendant took the money with the intent to appropriate it to the payment of a note which she held, yet her intent was to appropriate it to her own use.

5. Nor can there be any doubt that evidence of the defendant's being reputed, at the time when she took the money, to be a person of property, was rightly excluded. It would have had no legal tendency to prove that the taking of the money was not felonious.

6. We see no objection to the verdict, as recorded, nor in the proceedings of the court respecting it. " Howsoever the verdict seem to stray," says Lord Hobart, " and conclude not formally or punctually unto the issue, so as you cannot find the words of the issue in the verdict, yet if a verdict may be concluded out of it to the point in issue, the court shall work it into form, and make it serve." *Foster* v. *Jackson*, Hob. 54. See also 2 Gabbett Crim. Law, 529 ; 1 Chit. Crim. Law, 646.

7. The case already cited (4 Gray, 416,) is conclusive that bank notes are properly termed " bank bills " in an indictment for stealing them ; and in *Larned* v. *Commonwealth*, 12 Met. 245, 246, the opinion of the court was intimated, that a particular description of the number and denomination of the bills was not required in such an indictment. For the reasons there suggested, we are of opinion that the present indictment is sufficient to warrant a judgment on the verdict. It has been already decided that such an indictment is sufficient, if it contains an averment that the grand jury have not the means of describing the bills more particularly. *Commonwealth* v. *Sawtelle*, and *Commonwealth* v. *Duffy*, 11 Cush. 142, 145.

*Exceptions overruled.*